NOT FOR PUBLICATION

**United States District Court**
**for the District of New Jersey**

| |
|---|
| HYUN-YOP SUNG |
| Movant, |
| vs. |
| UNITED STATES OF AMERICA |
| Respondent. |

Civil No.: 12-7268 (KSH)

**Opinion**

**Katharine S. Hayden, U.S.D.J.**

I.      **Background**

Hyun-Yop Sung waived indictment and entered into a plea agreement with the United

States on a two-count information that charged him with 1) conspiring to unlawfully produce an

identification document and to commit credit-card fraud (18 U.S.C. § 371)[1] and 2) aggravated

identity theft (18 U.S.C. § 1028A and section 2).  The plea agreement recited Sung's sentencing

exposure: a maximum of five years of incarceration on count one and a statutory, consecutive

mandatory minimum of two years of incarceration on count two.  The agreement also contained

factual stipulations, specifically that the offenses of conviction involved losses "totaling

approximately more tha[n] $120,000 but not more than $200,000" and involved ten or more

victims.  But the parties did not stipulate to a sentencing range deemed to be reasonable; as to the

Guidelines range, Sung was entering an "open" plea.  (*See* Plea Agreement 2–3, 7 [D.N.J. Crim.

No. 2:12-cr-00070 D.E. 569].)

---

[1] The separate statutes implicated in the conspiracy conduct were 18 U.S.C. §§ 1028(a)(1),
(c)(3)(A), and 1029(a)(2).

1

In the final Presentence Report ("PSR"), Sung's adjusted offense level was level 15. (*See* PSR ¶ 65.) The two year mandatory minimum consecutive sentence for his conviction on count two was expressly excluded from the adjusted offense level calculation. (PSR ¶ 53.) Sung scored a criminal-history category of II, so the Guidelines sentencing range was 21 to 27 months; factoring in the mandatory minimum, his sentencing range became 45 to 51 months. (PSR ¶ 94.)

Prior to sentencing, Sung's attorney submitted a sentencing memorandum in which he sought a departure from the guidelines. He argued that the adjusted Guidelines range calculated in the presentence report was too severe in light of the actual offense conduct, and specifically objected to Sung's criminal-history classification, which "substantially over-represent[ed] the seriousness of Mr. Sung's criminal history and the likelihood that he will commit other crimes." (July 12, 2012 Letter 3–5.) Counsel separately articulated several other rationales for a downward departure, including the fact that Sung, as a non-citizen, would "be further incarcerated while he awaits deportation proceedings." (July 12, 2012 Letter 7.) The Court sentenced Sung to 21 months—the bottom of the Guidelines range—on count one and to a consecutive mandatory two-year term on count two, for an aggregate term of 45 months.

Sung did not appeal. Rather, in November 2012, he filed a timely *pro se* motion to vacate his sentence under 28 U.S.C. § 2255. [D.E. 1.] Sung claimed that his attorney had been ineffective for failing to seek both a downward departure under the Fast Track program (citing the "unwarranted sentencing disparities" language of 18 U.S.C. § 3553(a)(6)) and a downward departure "based on the harsher conditions of" Sung's confinement. Separately, Sung requested early deportation under 8 U.S.C. § 1231(a)(4)(B).

After being apprised of his rights under *United States v. Miller*, 197 F.3d 644, 649–50 (3d Cir. 1999), Sung elected to withdraw his § 2255 motion in anticipation of filing an "all-

inclusive" application for relief. The replacement, still-timely § 2255 motion—which is now

before the Court accompanied by a memorandum of law—raises an altogether different set of

claims:

> 1) "The District Court committed Plain and Procedural Error by Imposing Sentence Outside of [Sung's] Applicable Guideline Range," and
>
> 2) "Sentence Disparity: [Sung's] Sentence was greater than necessary to achieve 18 U.S.C. § 3553(a) purpose[s]."

(*See* Second § 2255 Motion 5–7 [D.E. 6].)

In ground one, Sung argues that his sentence amounted to an "upward departure from the

plea agreement applicable sentencing guideline range of level 15 or 21–27 months[']

imprisonment." (Mem. 2 [D.E. 6-2].) Relying on *United States v. Vidal-Reyes*, 562 F.3d 43 (1st

Cir. 2009), Sung maintains that this Court "should have taken the mandatory two-year sentence

into consideration by departing downwards with regards the Conspiracy Count which is not a

predicate offense." (Mem. 3.) Sung also contends that he should have received "fair notice"

before any upward departure was applied.

In ground two, Sung claims that his sentence, as imposed, creates an unwarranted

sentence disparity, suggesting that this Court did not properly weigh the § 3553(a) factors in

determining his sentence. Sung requests "alternatively" what he terms "Smith's Departure,"

based on the outcome in *United States v. Smith*, 27 F.3d 649, 655–56 (D.C. Cir. 1994)

(concluding that a downward departure based on incarceration severity pending deportation was

"appropriate" in certain circumstances). (Mem. 6–8.)

In its response, the government argues that Sung's claims are procedurally defaulted and

that the "alleged sentencing errors are not cognizable and are frivolous." (Resp. 4–5 [D.E. 12].)

## II.     Standard

Under 28 U.S.C. § 2255, a federal prisoner may:

> claim[] the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, [and] may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a). "In considering a motion to vacate a defendant's sentence, the court must accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record." *United States v. Booth*, 432 F.3d 542, 545 (3d Cir. 2005) (internal quotation marks & citation omitted). The Court may dismiss the § 2255 motion without holding an evidentiary hearing if the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief. 28 U.S.C. § 2255(b); *Booth*, 432 F.3d at 545–46.

## III.   Discussion

### A) Procedural Bars to Relief

#### 1) *Sung's Claims are Procedurally Defaulted*

To the extent that Sung attacks elements of his sentencing, his claims are procedurally defaulted. "Because collateral review under § 2255 is not a substitute for direct review, a movant ordinarily may only raise claims in a 2255 motion that he raised on direct review. . . . Put differently, a movant has procedurally defaulted all claims that he neglected to raise on direct appeal." *Hodge v. United States*, 554 F.3d 372, 379 (3d Cir. 2009) (citing *Bousley v. United States*, 523 U.S. 614, 621 (1998)). None of the exceptions to this rule applies here. Sung's sentencing claims, which are based entirely on the trial record, could have been raised on direct appeal. As he did not appeal, those claims are procedurally defaulted, and Sung makes no showing of cause or prejudice sufficient to overcome his default. *See United States v. Mannino*, 212 F.3d 835, 839 (3d Cir. 2000) (citing *United States v. Essig*, 10 F.3d 968, 977, 979 (3d Cir. 1993)).

2) *Sung's Non-constitutional Claims Do Not Allege a "Complete Miscarriage of Justice"*

Further, Sung's arguments pertaining to his sentence are based on statutory interpretation and the exercise of this Court's discretion. Although the § 2255 remedy is not, by the plain text of the statute, limited to constitutional violations, *see* 28 U.S.C. § 2255(a), errors that might justify reversal on direct appeal do not always suffice to win relief on collateral attack. *United States v. Eakman*, 378 F.3d 294, 298 (3d Cir. 2004). Rather, "[s]ection 2255 permits relief for an error of law or fact only where the error constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *Id.* (internal quotation marks and citations omitted). In the sentencing context, a movant must show that the trial court "received misinformation of a constitutional magnitude and . . . that the district judge relied at least in part on that misinformation." *Id.* (internal quotation marks and citations omitted). Sung has failed to demonstrate that the errors he now alleges rise to this demanding standard.

In short, the Court need not reach the merits given Sung's ineligibility for relief under the foregoing analyses. The Court has nevertheless examined the claims, and finds they fail on the merits as well.

B) <u>Sung's Claims are Meritless</u>

Ground one of Sung's § 2255 motion is based on two fundamental misunderstandings. The first relates to how Sung's Guidelines range was calculated. Sung was convicted of two counts, both connected to the same underlying conduct. The second count, charging aggravated identity theft, is not subject to a separate Guidelines calculation; the Guideline applicable to a conviction for aggravated identity theft is always two years and the sentence is always imposed consecutively. *See* U.S.S.G. § 2B1.6. The offense level of 15 that Sung repeatedly refers to is

the range associated with his conviction *on count one* of the information.  As specified in the

presence report, the sentencing exposure to 21 to 27 months of imprisonment was calculated

*before* considering the aggravated identity theft conviction.  (*See* PSR ¶¶ 53, 94.)  In imposing

the additional 24 months, the Court was not departing upward from the Guidelines range, but

was instead imposing a sentence of 24 months on count two and running that sentence

consecutively to the 21 months imposed on count one, for a total of 45 months.  Sung was

entitled to neither notice nor additional consideration because the Court was neither departing up

nor down from the Guidelines range applicable to the offenses of conviction.

     Second, the holding of *Vidal-Reyes* does not apply to Sung's conviction and sentence.  In

*Vidal-Reyes*, the First Circuit decided the effect of the "non-minimization" language of 18

U.S.C. § 1028A(b)(3), which specifies that:

> in determining any term of imprisonment to be imposed for the felony during
> which the means of identification was transferred, possessed, or used, a court
> shall not in any way reduce the term to be imposed for such crime so as to
> compensate for, or otherwise take into account, any separate term of
> imprisonment imposed or to be imposed for a violation of this section . . . .

     The facts were as follows.  Vidal was originally charged with several counts "derived

from the events that took place on or about July 2002 when Vidal first submitted a U.S. passport

application under his assumed name and social security number."  *Vidal-Reyes*, 562 F.3d at 46.

One of these charges was aggravated identity theft under 18 U.S.C. § 1028A; but as Vidal

pointed out in a motion to dismiss the charge, "the aggravated identity theft statute . . . was not

enacted until 2004," and thus could not apply to his 2002-era conduct.  *Id.*  "Recognizing its

error, the government then superseded the original indictment[,] . . . chang[ing] the factual basis

for the aggravated identity theft charge . . . to offense conduct that took place in 2006."  *Id.*

     Vidal eventually pleaded guilty.  Requesting a below-Guidelines sentence for his 2002-

era convictions, he argued that a Guidelines sentence "would be 'excessive' when combined with

the consecutive mandatory two-year sentence to be imposed on" the aggravated identity theft

count. *Id.* at 46–47. But the government argued—and the sentencing judge would eventually

agree and "adopt[] the government's recommendation"—that § 1028A(b)(3) prevented the court

from taking into account the two-year mandatory minimum when sentencing on the other

charges. *See id.* at 47–48.

On appeal, the First Circuit acknowledged that "the language of the statute, at

§ 1028A(b)(3), clearly prohibits a sentencing court from taking into consideration

§ 1028A(a)(1)'s mandatory two-year term for aggravated identity theft to reduce the sentence

that it would otherwise impose when sentencing a defendant for predicate offenses underlying

the aggravated identity theft conviction." *Id.* at 50. But the court disagreed with the

government's reading of that language, which would serve to "curb[] the sentencing court's

discretion" when "sentencing a defendant for other *non-predicate* counts of conviction charged

in the same indictment." *Id.* at 50; *see also id.* at 51–52 (discussing the government's argument

in favor of the congressional intent behind the provision). In vacating and remanding for a new

sentence, the court held as follows:

> a district court, in sentencing a defendant on a 18 U.S.C. § 1028A aggravated
> identity theft conviction, is not precluded from taking § 1028A's mandatory
> sentence into account in sentencing a defendant on other counts of conviction
> charged in the same indictment that are not predicate felonies underlying the
> § 1028A conviction. We find that this interpretation is the only one consistent
> with the text of the statute as written, and thus, the only one to which a criminal
> defendant ought fairly be submitted.

*Id.* at 56.

Here, Sung's conspiracy conviction plainly is a predicate felony, because it was during the conspiracy that "the means of identification was transferred, possessed, or used."[2] The information recites as follows relating to the conspiracy count:

> 5. From in or around June 2007 through on or about September 15, 2010, in Bergen County, in the District of New Jersey and elsewhere, defendant HYUN-YOP SUNG knowingly and intentionally conspired and agreed with S.H.P. and others to commit offenses against the United States . . . .
>
> 7. It was part of the conspiracy that defendant HYUN-YOP SUNG purchased and obtained from Co-Conspirator S.H.P. a "586" social security card in the name of an individual with the initials S.L., an actual person . . . .
>
> 8. It was further part of the conspiracy that defendant HYUN-YOP SUNG used the S.L. Identity to obtain a genuine but fraudulently issued driver's license.

It then recites the following with regard to the identity-theft count:

> 2. From in or around June 2007 through on or about September 15, 2010, in Bergen County, in the District of New Jersey and elsewhere, defendant HYUN-YOP SUNG knowingly transferred, possessed, and used, without lawful authority, the means of identification of another person, namely, S.L., during and in relation to violations of federal law, namely, unlawfully producing an identification document . . . .

Clearly, then, the overarching conspiracy served as the predicate for the charge of aggravated identity theft. Other courts have found conspiracy charges to be proper predicate felonies under the statute. *See, e.g.*, *United States v. Lumiguid*, 499 F. App'x 689, 692 (9th Cir. 2012) (nonprecedential per curiam); *United States v. Occident*, 243 F. App'x 777, 779 (4th Cir. 2007)

---

[2] Sung may be relying on 18 U.S.C. § 1028A(c), which enumerates a list of "felonies" for the purpose of determining when a § 1028A offense may properly be charged. Conspiracy under 18 U.S.C. § 371 is not listed in subsection (c). However, § 1028A(a)(1) nowhere specifies that the enumerated felony must be specifically charged in the indictment or information. *Cf. United States v. Mobley*, 618 F.3d 539, 549 (6th Cir. 2010) (reading broadly the "in relation to" statutory language). Here, Sung pleaded guilty to a conspiracy that involved several violations of 18 U.S.C. §§ 1028 and 1029, which are themselves enumerated in 18 U.S.C. § 1028A(c)(4). Thus, it is plain that the aggravated identity theft was committed "in relation to" the conspiracy as well as "during" the conspiracy.

(nonprecedential per curiam); *see also United States v. Smith*, No. 12–5033, 536 F. App'x 370, 370–71 (4th Cir. 2013) (nonprecedential per curiam).

In ground two of Sung's motion, he claims that his sentence was "greater than necessary" under 18 U.S.C. § 3553(a).  Specifically, he argues that 1) his future deportation and 2) the fact that he is serving his sentence at a private prison require the Court to "assign[] more weight to those factors."  (Mot. 6.)   He also argues that the Court "may have assigned more weight to section 3553(a)(2)(A) than the rest of the other sentencing factors."  (Mem. 7.)  But the balancing of the § 3553(a) factors is within this Court's discretion.  *United States v. Hernandez*, 633 F.3d 370, 375 (5th Cir. 2011) ("[A]lthough courts must *consider* all the § 3553(a) factors, it is not possible, let alone required, that they give incommensurable factors . . . equal weight.") (footnotes omitted); *United States v. Tomko*, 562 F.3d 558, 567 (3d Cir. 2009).  This claim is without merit.

Finally, at the top of page 2 of  his memorandum of law, Sung adds to the first paragraph of the Jurisdiction section this incomplete sentence:  "And where the Petitioner's Counsel did not provide 'Effective Assistance' of Counsel during Petitioner's sentencing."  The two grounds set forth in the § 2255 motion do not challenge counsel's performance, nor does the memorandum further elaborate on this oblique reference.  Liberally construing his *pro se* filing, *see Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002), the Court will assume that Sung may be attempting to invoke his "ground one" and "ground two" allegations from his original § 2255 motion, which otherwise appear to be abandoned.  Sung was notified that that any new motion he filed would have to include *all* of his claims (order under *United States v. Miller*, 197 F.3d 644, 649–50 (3d Cir. 1999) [D.E. 2]).  For this Court now to interpret a fleeting mention in his sentencing Memorandum as a reassertion of his original claims would "stretch the obligation of lenience to

9

its breaking point." *Kohler v. Pennsylvania*, 438 F. App'x 120, 124 (3d Cir. 2011) (nonprecedential per curiam). In any event, the record reveals that counsel did seek to lower Sung's sentence based on, among other things, the fact that he would be incarcerated pending deportation proceedings, while arguing that a Guidelines sentence would be unfair. (*See, e.g.*, Sentencing Mem. 5–7.) Because counsel appears to have advocated for essentially the same relief that Sung now seeks, the claim, assuming it is being made, is frivolous, lacks support, and in no way meets the exacting standards for demonstrating ineffective assistance.[3]

## IV. Conclusion

For the foregoing reasons, Sung's motion is denied. Because jurists of reason would not debate this outcome, no certificate of appealability will be granted. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *see also* 28 U.S.C. § 2253(c)(2). An appropriate order will be filed.

January 27, 2014

/s/ Katharine S. Hayden
Katharine S. Hayden, U.S.D.J.

---

[3] Sung also abandoned his 8 U.S.C. § 1231(a)(4)(B) "claim." That statute merely allows for the Attorney General to remove an alien under certain circumstances. Because "the statute vests the Attorney General, not the district court, with the authority to curtail a prison sentence for the purpose of deportation," a court "cannot *sua sponte* issue a deportation order without a request from the United States Attorney." *United States v. Marin-Castaneda*, 134 F.3d 551, 556 (3d Cir. 1998). In fact, Sung "does not even have standing to enforce this statute." *Id.* (citing *Thye v. United States*, 109 F.3d 127, 129 (2d Cir. 1997)). Finally, *United States v. Smith* is inapposite because it dealt with a court's belief that it *could not* depart down to reach the aggravating circumstances of pre-removal incarceration. *See Smith*, 27 F.3d at 650, 655–56.